UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERIC JOHNSON and RICHARD MANKAMYER, <br><br> Plaintiffs, <br><br> v. <br><br> WASHINGTON STATE CONSERVATION COMMISSION, and the following in their individual and official capacities: JIM KROPF, CHAIR; DEAN LONGRIE, VICE-CHAIR; HAROLD CROSE, COMMISSIONER; LARRY COCHRAN, COMMISSIONER; DARYL WILLIAMS, COMMISSIONER; SARAH SPAETH, COMMISSIONER; PERRY BEALE, COMMISSIONER; THOMAS MILLER, COMMISSIONER; EXECUTIVE DIREECTOR MARK CLARK; POLICY DIRECTOR RON SHULTZ; JOHN AND JANE DOES 1–10, <br><br> Defendants. | CASE NO. C18-5824 RJB <br><br> ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. 11. The Court has considered the pleadings filed in support of and in opposition to the motion

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

and the file herein.

For the reasons provided below, Defendants' Motion for Summary Judgment should be granted, in part. Defendants' motion to summarily dismiss Plaintiffs' 42 U.S.C. § 1983 federal law claim should be granted, and the Parties should be ordered to show cause, if any they have, why this Court should not decline to exercise supplemental jurisdiction and dismiss without prejudice the Administrative Procedure Act ("APA") and Open Public Meeting Act ("OPMA") state law claim.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

### A. FACTS

Plaintiffs serve in volunteer positions as Thurston County Conservation District (TCD) Supervisors. Defendant Washington State Conservation Commission (WSCC) is a state agency. Dkt. 1-1, at 3–4. The other defendants are members of the WSCC, except John and Jane Does 1–10, who are individuals not yet identified. Dkt. 1-1, at 3–4.

The WSCC appointed Plaintiff Eric Johnson ("Mr. Johnson") as TCD Chairman with a term of May 2016 to May 2019. Dkt. 1-1, at 4. Plaintiff Richard Mankamyer ("Mr. Mankamyer") was elected and serves as TCD Board Auditor with a term of May 2017 to May 2020. Dkt. 1-1, at 4.

Plaintiffs allege that they uncovered "questionable activities by TCD staff and contractors, including conflicts of interest and self-dealing." Dkt. 1-1, at 4. Resultantly, TCD staff led "a retaliatory lobbying campaign against Johnson and Mankamyer" that culminated in the removal of Plaintiffs from their voluntary positions. Dkts. 1-1, at 4; and 16, at 2.

WSCC investigated complaints against Plaintiffs alleging that Mr. Johnson unlawfully obtained special benefits, that Plaintiffs violated the state Open Public Meetings Act and Open

Public Records Act (OPRA), and that Plaintiffs harassed TCD Staff. Dkt. 1-1, at 5. The harassment allegations only were investigated by the Washington State Human Rights Commission, and a case regarding the OPMA allegations was, or is, pending in Thurston County Superior Court (*West v. Thurston Conservation District,* Thurston Co. No. 18-2-03305-34). Dkt. 1-1, at 5.

The WSCC issued a detailed investigative report (Dkt. 12-1) on July 20, 2018. Dkt. 1-1, at 5. The investigative report provides an executive summary, a summary of its factual findings, applicable laws, a description of the investigation process, and analysis of the complaints received by the WSCC. Dkt 12-1. It recommended a WSCC hearing for specified neglect and malfeasance, with notice to Plaintiffs.. Dkt. 12-1, at 3. Notice was mailed to Plaintiffs via United States Postal Service and email. Dkt. 12-2, at 2–5.

Plaintiffs apparently retained private counsel, Mr. Shawn Newman, and issued a response to the investigative report denying its conclusions and findings. Dkt. 12-3.

A Thurston County voter, Mr. Arthur West, submitted a request for recall to the Thurston County Auditor alleging that Plaintiffs committed misfeasance or malfeasance of office when they "went 'rogue' and illegally retained private counsel" in violation of RCW 43.10.030[1] and RCW 43.10.067[2]. Dkt. 12-3. The Thurston County Auditor declined to investigate, indicating that it was not the proper place to file a recall charge and suggested filing with the Thurston

---

[1] The attorney general shall [] Defend all actions and proceedings against any state officer or employee acting in his or her official capacity, in any of the courts of this state or the United States[.]" RCW 43.10.030.

[2] No officer, director, administrative agency, board, or commission of the state,
other than the attorney general, shall employ, appoint or retain in employment
any attorney for an admirative body, department, commission, agency, or
tribunal or any other person to act as attorney in any legal or quasi legal capacity
in the exercise of any of the powers or performance of any of the duties
specified by law to be performed by the attorney general[.]"
RCW 43.10.067.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3

County Conservation District. Dkt. 17-2.

The WSCC held a special meeting on August 29, 2018, regarding the staff investigation report. Dkt. 1-1, at 5. Plaintiffs allege that the special meeting's online announcement noted "[t]he Commission will not take comment from the public relating to the content of the TCD investigation report." Dkt. 1-1, at 5. Plaintiffs allege that, nevertheless, approximately sixty people signed up to comment and that Defendant Commissioner Harold Crose also asked members of the public to send additional comments to the WSCC. Dkt. 1-1, at 5. Plaintiffs allege that they were not in attendance at the meeting and that they were unaware that the WSCC was going to take public comment. Dkt. 1-1, at 5.

Plaintiffs allege that the WSCC Commissioners expressed a desire to expedite matters and chose an "informal public hearing under the OPMA rather than an adjudication under the APA based on legal advice from WSCC's Policy Director, attorney Ron Shultz. Dkt. 1-1, at 6.

Plaintiffs allege that, on an audio tape recording of the August 29, 2018, special meeting, "[i]n response to questions by Commissioners regarding who sets the hearing date, Mr. Shultz advised: 'You don't have to be reasonable,'" which was followed by laughter. Dkt. 1-1, at 6. The WSCC voted to hold a removal hearing "sometime between October 1 and October 31, 2018," and to hire a hearings examiner. Dkt. 1-1, at 6. Chief Administrative Law Judge Lorraine Lee ("Chief Lee") apparently agreed to preside over the hearing. Dkt. 14-2. Chief Lee later decided not to preside over the hearing. Dkt. 14-3. She was apparently replaced by Mr. Gary McLean ("Mr. McLean"). Dkt. 14-3, at 19.

In an email between the Parties and Mr. McLean, Plaintiffs' counsel wrote:

> You ([Mr. McLean]) stated your role as hearings officer was to address logistic and procedural issues.
>
> You stated you are not the decisionmaker but a timekeeper who

would rule on any objections.

I noted that my clients have:

- No opportunity to submit and respond to the WSCC's brief.
- No opportunity for subpoenas or discovery.
- No rules regulating the course of the proceedings.
- No rules on evidence.
- No new information or exhibits will be admitted during the hearing.
- No right to call witnesses.
- No testimony taken under oath.
- No opportunity for cross-examination.
- No rules regarding an official agency record.

Dkt. 14-3, at 19.

Plaintiffs allege that Defendant Executive Director Clark mailed Plaintiffs a letter, dated September 11, 2018, rescheduling the removal hearing to between November 14, 2018, and December 14, 2018. Dkt. 1-1, at 6. According to the letter, "Outside of the submittal of the hearing briefs, there is no additional pre-hearing practice authorized. RCW 89.08 does not grant the WSCC power to issue subpoenas or to authorize discovery, so no such procedures are permitted." Dkt. 1-1, at 6.

On September 11, 2018, Plaintiffs sent an email to the WSCC requesting an adjudicative proceeding. Dkt. 1-1, at 6. Defendant Executive Director Clark responded, citing RCW 89.08.200 (providing, in part, "Supervisors shall serve without compensation [and] may be removed by the state conservation commission upon notice and hearing, for neglect of duty or malfeasance in office, but for no other reason."), "Pursuant to RCW 34.05.416, the WSCC has decided not to conduct an adjudicative proceeding under the Administrative Procedures Act (APA), RCW 34.05." Dkt. 1-1, at 7.

The hearings examiner held a prehearing conference on November 30, 2018, and issued prehearing orders addressing how the meeting was to be conducted. Dkts. 11, at 9; and 16-7. The

prehearing orders provided that the Parties may offer exhibits and make presentations through witness testimony. Dkts. 11, at 9; and 16-7.

The hearing was scheduled for December 7, 2018. Dkt. 12-9, at 2. Apparently, because of medical emergencies affecting WSCC members, the hearing was rescheduled for February 20, 2019. Dkt. 11, at 9.

Phyllis Barney, an Assistant Attorney General assigned to advise the WSCC Commissioners regarding the potential removal of Plaintiffs, declared, in support of Defendants' motion for summary judgment, the following:

> 3. The public hearing required by RCW 89.08.200 before a Conservation District supervisor can be removed was held in Olympia on February 20, 2019. Mr. Johnson and Mr. Mankamyer were represented by Shawn Newman. Conservation investigative staff were represented by Assistant Attorney General Chris Reitz. The hearing commenced at approximately 8:30 am.
>
> 4. Hearings Examiner Gary McLean presided for the Commission. The Hearings Examiner polled the Commissioners at the start of the hearing, inquiring whether any Commissioners would be recusing themselves, and requesting disclosure of any contacts or communications that the Commissioners had received prior to the hearing. Commissioner Carol Smith recused herself, and left the hearing. Commissioner Smith did not vote on removal.
>
> 5. Both the supervisors and Commission staff presented witnesses. The supervisors also entered exhibits through witnesses at hearing.
>
> 6. After the close of the hearing, the Commission entered Executive Session under RCW 42.30.110(f)[3] [*sic*] to evaluate the complaints against Mr. Johnson and Mr. Mankamyer, and the facts adduced at hearing.

---

[3] (1) Nothing contained in this chapter may be construed to prevent a governing body from holding an executive session during a regular or special meeting: []

(f) To receive and evaluate complaints or charges brought against a public officer or employee. However, upon the request of such officer or employee, a public hearing or a meeting open to the public shall be conducted upon such complaint or charge[.]

RCW 42.30.110(1)(f).

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 6

> 7. After deliberating for approximately 90 minutes, the
> Commissioners returned to open session, and voted to remove Mr.
> Johnson and Mr. Mankamyer from their volunteer positions as
> Thurston Conservation District supervisors.

Dkt. 16, at 2.

**B. PROCEDURAL HISTORY**

On September 24, 2018, Plaintiffs filed a complaint against Defendants alleging (1) violation of Washington's APA and OPMA and (2) violation of 42 U.S.C. § 1983. Dkt. 1-1. Plaintiffs filed the complaint in Thurston County Superior Court. Dkt. 1-1. On October 11, 2018, Defendants removed the case to this Court alleging federal question jurisdiction for the § 1983 claim and supplemental jurisdiction over the APA and OPMA claim. Dkt. 1.

On January 24, 2019, Defendants filed a stipulated motion to continue the joint status report deadline because "[t]he hearing on removal that is the subject of the claims in this action, originally scheduled for December 7, 2018 was rescheduled to February 20, 2019." Dkt. 9, at 2. The Court granted the stipulated motion to continue. Dkt. 10.

Defendants filed the instant motion for summary judgment on February 6, 2019. On February 13, 2019, Plaintiffs filed a response in opposition to Defendants' motion for summary judgment, to which Defendants replied on March 7, 2019. Plaintiffs argue that Defendants' filing of the motion for summary judgment before the February 20, 2019, hearing is premature and sanctionable. Dkt. 14

On March 13, 2019, Defendants filed a second stipulated motion to continue joint status report deadlines "until 30 days after the Court has ruled on Defendants' pending Motion for Summary Judgment." Dkt. 18, at 2. The Court granted the second stipulated motion to continue. Dkt. 19.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7

## C. ORGANIZATION OF OPINION

This opinion will first consider Plaintiffs' allegation that Defendants' motion for summary judgment was filed prematurely and is sanctionable. It will then provide the standards for summary judgment, claims under 42 U.S.C. § 1983, Eleventh Amendment immunity, and qualified immunity. It will then consider the motion for summary judgment by claim: first, Plaintiffs' claim under 42 U.S.C. § 1983 and, second, Plaintiffs' state law claim under the APA and OPMA.

## II. DISCUSSION

### A. PLAINTIFFS' ALLEGATION OF PREMATURE FILING

Plaintiffs argue that Defendants' Motion for Summary Judgment "is premature and contrary to stipulations resulting in court orders." Dkt. 14, at 8. Plaintiffs note that, in an email dated October 17, 2018, Defendants' counsel requested that the Parties stipulate to continue the Joint Status Report deadline to "ensure that the court has all relevant facts necessary to adjudicate both of your clients' claims …. Agreeing to a stay will ensure that discovery after the 12/7 hearing can proceed in an orderly, efficient fashion, and in accordance with Rule 26." Dkt. 14, at 8–9. Plaintiffs note that the continuance would help "determine what, if any, amendments need to be made to the pleadings." Dkt. 9, at 9.

Defendants filed the instant motion for summary judgment on February 6, 2019, after counsel had participated in a third prehearing conference. Dkt. 14, at 9. Plaintiffs allege that they were not made aware of the motion for summary judgment until after the prehearing conference, where they had stipulated to continue the Joint Status Report deadline. Dkt. 14, at 9. Plaintiffs allege that this amounts to bad faith and request sanctions against Defendants. Dkt. 14, at 22–23.

To the extent that Plaintiffs argue that discovery or additional hearing materials are

necessary to formulate a response to Defendants' motion for summary judgment under Fed. R. Civ. P. 56(d), they have not demonstrated the need for additional facts that would be necessary for the Court to resolve the readily answerable questions of law before it. Defendants' motion for summary judgment presents the Court with questions of law—not fact. The Parties' stipulated agreement to continue the Joint Status Report deadline did not preclude Defendants from filing a motion for summary judgment.

Therefore, the Court should consider Defendants' instant motion for summary judgment and decline Plaintiffs' request for sanctions.

**B. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990).

**C. CLAIMS UNDER 42 U.S.C. § 1983 GENERALLY**

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must set forth the specific factual bases upon which it claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Vague and conclusory allegations of official participation in a civil rights violation are not sufficient to support a claim under § 1983. *Ivey v. Board of Regents*, 673 F.2d 266 (9th Cir. 1982). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the

basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982).

Neither states nor state officials acting in their official capacities are persons for purposes of 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 48, 71 (1989). Because they are not persons within the meaning of § 1983, Plaintiffs have not stated a cause of action against the any of the named individuals acting in their official capacities.

**D. ELEVENTH AMENDMENT IMMUNITY**

The Eleventh Amendment to the United States Constitution bars a person from suing a state in federal court without the state's consent. *See Seminole Tribe of Florida v. Florida* 116 U.S. 1114, 1131 (1996); *Natural Resources Defense Council v. California Dep't of Transportation*, 96 F.3d 420, 421 (9th Cir. 1996). Eleventh Amendment immunity extends to state agencies. *Pennhurst State Sch. & Hosp. v. Holdeman*, 465 U.S. 89, 101-102(1984). Eleventh Amendment immunity is not automatically waived in actions brought under 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332 (1979). Washington has not waived the protection of the Eleventh Amendment. *Edgar v. State*, 92 Wn.2d 217 (1979).

The WSCC is a state agency ("The Washington State Conservation Commission (WSCC) is a Washington State Agency located in Olympia." Dkt. 1-1, at 3.) that apparently has not waived its Eleventh Amendment immunity; therefore, it is entitled to Eleventh Amendment immunity from Plaintiffs' §1983 claim.

**E. QUALIFIED IMMUNITY**

Defendants in a Section 1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 129

U.S. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Harlow v. Fitzgerald*, 457 U.S. at 815. The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular official. *Id*. at 819. Whether a reasonable official could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in the litigation. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872–73 (9th Cir. 1993).

In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 121 U.S. 2151, 2156 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. While the sequence set forth in *Saucier* is often appropriate, it is no longer mandatory. *Pearson v. Callahan*, at 129 U.S. at 811. The plaintiff bears the burden of proving that the particular federal right was violated and was clearly established at the time. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017).

The privilege of qualified immunity is an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Saucier v. Katz,* 121 U.S. at 2156.

## F. 42 U.S.C. § 1983 AND QUALIFIED IMMUNITY ANALYSIS

Plaintiffs have not met the burden for a § 1983 claim because they have not demonstrated that Defendants' conduct deprived them of procedural due process rights secured by the Constitution or laws of the United States. Additionally, Defendants are entitled to qualified immunity shielding them from Plaintiffs' § 1983 claim.

1. Section 1983 Analysis

At issue is whether the Defendants' decision to provide a volunteer supervisor position removal hearing under the OPMA instead of the APA deprived Plaintiffs of a procedural due process right secured by the Constitution or laws of the United States. Plaintiffs have no such right.

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Board of Education of Lynwood Unified School District*, 149 F.3d 971, 982 (9th Cir. 1998) (internal citations omitted). To defeat a claim of qualified immunity, the plaintiff "bears the burden of proving not only that both elements of his claim are resolved in his favor, but also that both elements are 'clearly established' in his favor.*" Id.* (citing *Davis v. Scherer*, 468 U.S. 183, 197 (1984)).

    *a. Deprivation of a Constitutionally Protected Liberty or Property Interest*

Plaintiffs have not identified a constitutionally protected liberty or property interest here. There are no identifiable liberty or property interests in Plaintiffs' volunteer positions. *See Hyland v. Wonder*, 972 F.2d 1129, 1140–41 (9th Cir. 1992). Plaintiffs have not offered facts that would give rise to a right to the volunteer supervisor positions, especially when state law appears to provide that volunteer supervisor positions are subject to removal by the Commission under

RCW 89.08.200 ("A supervisor may be removed by the state conservation commission upon notice and hearing, for neglect of duty or malfeasance in office, but for no other reason.").

Plaintiffs also argue that a recall petition is the proper procedure for removal of an elected conservation district supervisor, such as Mr. Mankamyer. However, to the extent that Plaintiffs argue that a recall petition for elected conservation district supervisors is a procedural due process right, privilege, or immunity secured by the Constitution or laws of the United States, they have not met their burden of proof under §1983.[4]

### b. Denial of Adequate Procedural Protections

Plaintiffs' allegations may raise concerns regarding denial of adequate procedural protections (e.g., Mr. Shultz advising the WSCC, "'You don't have to be reasonable'"; the occurrence of approximately sixty public comments after the WSCC announced it would not accept public comments). Nevertheless, Plaintiffs bear the burden of proving both elements of their procedural due process claim. As discussed above, Plaintiffs have not proven the deprivation of a constitutionally protected liberty or property interest. Therefore, the Court need not determine whether the aforementioned possible concerns amount to a denial of adequate procedural protections clearly established in Plaintiffs' favor.

### 2. Qualified Immunity Analysis

Even if Defendants had denied the Plaintiffs of a constitutional right to an adjudicative proceeding under the APA, the doctrine of qualified immunity would bar Plaintiffs' § 1983 claim. Plaintiffs have failed to establish that Defendants violated clearly established rights of which a reasonable person would have known. Instead, it appears that the Defendants could have reasonably believed that their removal actions were proper and consistent with the statutory

---

[4] This should not be construed as a ruling or judgment on Plaintiffs' state APA and OPMA claim.

provisions regarding the removal of volunteer supervisors.[5] *See* RCW 89.08.200 ("A supervisor may be removed by the state conservation commission upon notice and hearing, for neglect of duty or malfeasance in office, but for no other reason."). The Defendants are entitled to qualified immunity on the personal § 1983 claims against them.

**G. STATE LAW CLAIM AND SUPPLEMENTAL JURISDICTION**

Pursuant to 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over state law claims if: (1) the claims raise novel or complex issues of state law, (2) the state claims substantially predominate over the claim which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the values of economy, convenience, fairness, and comity." *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (internal citations omitted).

Although "it is generally within a district court's discretion either to retain jurisdiction to adjudicate the pendent state claims or to remand them to state court," *Harrell v. 20th Ins. Co.,* 934 F.2d 203, 205 (9th Cir. 1991), in the interest of fairness, the parties should be given an opportunity to be heard on whether the Court should decline to exercise supplemental jurisdiction over the state law claims.

By this order, Plaintiffs' 42 U.S.C. § 1983 federal law claim will be dismissed. The Parties should be ordered to show cause, in writing, if any they have, why this Court should not decline to exercise supplemental jurisdiction over, and dismiss, the state law claim without

---

[5] This should not be construed as a ruling or judgment on Plaintiffs' state APA and OPMA claim.

prejudice. The Parties' showings, if any, should be filed by April 5, 2019, and should not exceed five pages.

### III. ORDER

Therefore, it is hereby **ORDERED** that:

- Defendants' Motion for Summary Judgment (Dkt. 11) **IS:**
- **GRANTED, as to the 42 U.S.C. § 1983 federal claim;**
  - Plaintiffs' 42 U.S.C. § 1983 federal claim is **DISMISSED**; and
- The Parties are **ORDERED TO SHOW CAUSE**, in writing, if any they have, why this Court should not decline to exercise supplemental jurisdiction and dismiss the state law APA and OPMA claim without prejudice. Parties' showings, if any, shall be filed by **April 5, 2019**, and shall not exceed three pages.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 29th day of March, 2019.

ROBERT J. BRYAN
United States District Judge